IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


PULLMAN FINANCIAL CORP.,      )
                  Plaintiff      )
                               )
    vs.                        )          Civil Action No. 07-1703
                               )          Magistrate Judge Amy Reynolds Hay
ROBERT M. HOTALING,            )
                  Defendant      )


## MEMORANDUM OPINION AND ORDER


In  this diversity matter, Pullman Financial Corporation ("PFC" or "the Plaintiff"), a

Pennsylvania corporation, alleges that Robert M. Hotaling ("Hotaling" or "the Defendant"), a

New York state resident, owes PFC $138, 306.73, representing Hotaling's half of the agents'

commission on a life insurance policy written for one of Hotaling's clients.  The insurer required

that the full commission be returned when it ultimately denied a claim made on the policy.  In

response to the Complaint (Doc. 1), Hotaling filed the pending Motion to Dismiss for Lack of

Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative, to Dismiss for

Failure to State a Cause of Action Pursuant to Rule 12(b)(6), or to Dismiss or Transfer this

Matter Pursuant to the venue provisions set out in 28 U.S.C. §1404(a) and §1406(a) (Doc. 5).

The Motion, insofar as it seeks dismissal for lack of personal jurisdiction or for improper venue

will be denied.  The Motion to transfer venue pursuant to 28 U.S.C. § 1406(a) will be granted.

The court does not reach the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).


## I. BACKGROUND

In late 2004 or early 2005, Ronald V. Pullman ("Pullman"), the sole shareholder of PFC,

and Hotaling, a principal in the New York independent financial services company, Hotaling

Group, met during an overseas insurance convention.  There, they explored a possible joint

venture whereby the two would cooperate in selling  premium financed life insurance policies

"based on written presentations and cost illustrations prepared by PFC at its headquarters . . . in Carnegie, Pennsylvania." (Pullman Affidavit ¶ 5). PFC agreed to perform services for Hotaling's existing New York client base, including analyzing the prospective client's financial status, determining the maximum amount of insurance needed, preparing written illustrations, and attending client meetings, either in person or by telephone. PFC also agreed to secure financial documents for insurance and loan underwriting, and to coordinate with banks, insurance companies, and insurance trusts. ( Id. at ¶ 6). Commissions received for successful sales were to be split equally between Pullman and Hotaling. (Doc. 1 at ¶ 2(a)).

This joint venture extended over a period of twenty-three months and involved presentations to numerous clients. (Pullman Affidavit at ¶ 9). Pullman contends that PFC assisted Hotaling in closing sales for at least thirty-two prospective clients. Information relating to these accounts, including the date on which PFC opened files, copies of email between the parties, life insurance illustrations, and copies of written presentations are attached as exhibits to Pullman's affidavit.

The current dispute originated with a June 20, 2005 account presentation made to New York residents, Mr. and Mrs. Constantino Presta. PFC and Hotaling proposed to sell Mr. Presta ("Presta") a premium financed life insurance policy with a face amount of ten million dollars. It was anticipated that at Presta's demise, this policy would cover the amount of estate tax due. Under the plan proposed by PFC, Presta would purchase a term life insurance policy naming as beneficiary an irrevocable trust exempt from federal estate taxes. This term policy would then be converted to "an Elite Index Universal Life Insurance Policy" whose premium would be financed by a collateralized loan. (Doc. 1 at ¶ 2(b) - (e)).

In furtherance of this plan, the Presta Irrevocable Trust was created on July 29, 2005, and four months later, an application was filed with the American General Life Insurance Company

("AIG"). This application specified that agents Pullman and Hotaling were each to be paid fifty percent of the commission. AIG issued the policy on January 16, 2006. (Id. at ¶ 2(e) - (g)).

On March 28, 2006, an In-Force Change Application was filed with AIG in order to convert the Presta term policy to an Elite Universal Life Insurance Policy, with the premium to be paid with proceeds of a loan made by HSBC Bank, USA. AIG then issued a new policy, with a face amount of $9,537,785, identifying the Bank as assignee. (Id. at ¶ 2(I)).

On March 31, 2006, AIG issued a commission check for $276,613.45 to Pullman. Six days later, PFC issued a check to Hotaling in the amount of $138, 306.73, half of the full commission paid by AIG to Pullman. (Id. at ¶2(j) - (l)).

In late 2006, Presta died. The Trust made a claim on his estate under the Premium Adjustable Life Insurance Policy. Following an investigation, AIG concluded that Presta had failed to disclose a pre-existing condition, and denied the claim. (Id. at ¶ 2(p) - (q)).

On October 5, 2007, AIG reversed the $276,613.45 commission check issued to Pullman, and refunded premiums to Presta's estate. PFC alleges that it has made repeated demands on Hotaling for reimbursement of his portion of the Presta commission, but Hotaling has refused to return the money. (Id. at ¶¶ 2 (r) -(s)).

Hotaling responded to the Complaint, filing Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Fed. R. Civ. P. 12(b)(3) for improper venue. Hotaling asks that this matter not be dismissed, and that it be transferred to the United States District Court for the Southern District of New York.

The court turns first to the issue of personal jurisdiction.

## II. THE LAW

### A. Personal Jurisdiction

# 1. **General Principles**

Under Fed. R. Civ. P. 4(e),[1] a federal court may assert personal jurisdiction over a

non-resident defendant to the extent allowed by the law of the state in which the action is

brought.  See Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

Pennsylvania authorizes the exercise of long-arm jurisdiction over non-residents "to the fullest

extent allowed under the Constitution of the United States."  42 Pa. Con. Stat. Ann. § 5322(a)(4);

Renner v. Lanard Toys, Ltd., 33 F.3d 277, 279 (3d Cir. 1990); Farino, 960 F.2d at 1221.

Accordingly, the statute is restricted only by the Due Process Clause of the Fourteenth

Amendment of the U.S. Constitution.  Kubik v. Letteri, 614 A.2d 1110,1113-14 ( Pa. 1992).  A

court should not, however, presume that jurisdiction is proper merely because the requirements

of a state's long-arm statue have been satisfied.  Pennzoil Prod. Co. v. Colelli & Assoc., Inc., 149

F.3d 197, 201 (3d Cir. 1998).

Once a jurisdictional issue has been raised, the plaintiff bears the burden of establishing

contacts  sufficient to support the court's exercise of personal jurisdiction.  See Marten v.

Godwin, 499 F.3d 290, 295-96 (3d Cir. 2007); Provident Nat'l Bank v. California Fed. Sav. &

Loan Assn, 819 F.2d 434, 437 (3d Cir. 1987).  Prior to trial, a plaintiff need only make a prima

facie showing of jurisdiction, and the reviewing court must interpret all facts and allegations in a

light most favorable to the plaintiff.  Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir.

2002).

The Plaintiff may meet his burden with respect to jurisdiction by showing that a

defendant has had either general or specific contacts with the forum state.  "A defendant is

---

[1]   This Rule provides in relevant part:
    Unless otherwise provided by federal law, service upon an individual from whom a waiver has
not been obtained and filed, other than an infant or incompetent person, may be effected in any judicial
district of the United States: (1) pursuant to the law of the state in which the district court is located. Fed.
R. Civ. P. 4(e)(1).

subject to general jurisdiction when it has continuous and systematic contacts with the foreign state." <u>Gen. Elec. Co. v. Deutz AG</u>, 270 F.3d 144, 150 (3d Cir. 2001) (<u>citing</u> <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 446 U.S. 408, 414-16 (1984)).  When a state has general jurisdiction over a party, it may exercise jurisdiction based on any claim, including those unrelated to the party's contacts with the state.  <u>Farino</u>, 960 F.2d at 1221.  The threshold showing required to establish general jurisdiction is high.  <u>Reliance Steel Prods Co. v. Watson Ess. Marshall & Engas</u>, 675 F.2d 587, 589 (3d Cir. 1982).  Having carefully reviewed the record, the Court finds that the Plaintiff has failed to show that Hotaling's contacts with Pennsylvania have been consistent and systematic so as to establish general personal jurisdiction so as to subject him to any claim of any sort in this district.[2]

## 2. <u>Specific Personal Jurisdiction</u>

The Court finds that although general jurisdiction is unavailable, it may exercise specific personal specific jurisdiction over Hotaling.  "Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities."  <u>Id.</u> (<u>quoting</u> <u>Burger King Corp.</u>, 741 U.S. at 472)).  Determining whether specific jurisdiction exists involves a three-part[3] inquiry: (1) the

---

[2]  In his Affidavit (Doc. 5 Attachment 1 ), Hotaling asserts - and the Plaintiff does not dispute - that he is a resident of the state of New York, and the principal of a business located in New York.  He states that he does not now maintain and never has leased or maintained any office, place of business, staff, or agents in the Commonwealth of Pennsylvania.  He also states that he has never leased, maintained a residence, or owned real property here, has never conducted business in the Commonwealth, and in working with Pullman and PFC, has never worked with or serviced clients in Pennsylvania.

[3]  Some Third Circuit cases utilize a two-part test, noting that the third prong - a determination of whether exercising jurisdiction would comport with notions of fair play and substantial justice - is discretionary.  <u>See</u>, <u>e.g.</u>, <u>Pennzoil</u>, 149 F.3d at 201.  However, the third prong is almost universally applied, and has been referred to as "mandatory."  <u>See</u>, <u>e.g.</u>, <u>Mesalic v. Fiberfloat Corp.</u>, 897 F.2d 696, 701 (3d Cir. 1990)("Having determined that there were sufficient minimum contacts, we <u>must </u>determine whether the assertion of personal jurisdiction accords with notions of 'fair play and substantial justice.'") (citations omitted) (emphasis added).  Accordingly, this Court employs a three-part inquiry.

plaintiff must show that the defendant has "constitutionally sufficient 'minimum contacts' with the forum state." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing Burger King, 471 U.S. at 474); (2) the plaintiff's claim must "arise out of or relate to those activities." Helicopteros, 466 U.S. at 414; and (3) additional factors must be taken into account in order to ensure that the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement, 326 U.S. 310, 316 (1945)). The Court evaluates each of these requirements against the background of the record

### a. Minimum Contacts

In order for a court to find that sufficient minimum contacts exist to warrant the assertion of specific personal jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting business within the forum state, thus invoking the benefits and protections of its laws." Farino, 960 F.2d at 1221 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). These acts must be "such that [the defendant] should reasonably anticipate being haled into court [in the forum state]." World-Wide Volkswagon v. Woodson, 444 U.S. 286, 297 (1980). This test is intended to protect a non-resident defendant from jurisdiction based on contacts that are "random, fortuitous," or "attenuated," or that result from the unilateral activity of another party or a third person. Burger King, 471 U.S. at 475 (citations omitted).

In contract cases, courts are directed to determine whether the Defendants "reach[ed] out beyond [their ] state [to] create continuing relationships and obligations with citizens of another state." Gen. Elec. Co., 270 F.3d at 150. Courts are not reluctant to find personal jurisdiction in such instances. "Modern transportation and communications have made it much less

burdensome for a party sued to defend himself in a State where he engaged in economic activity." Burger King, 471 U.S. at 474.

PFC argues that the minimum contacts requirement is satisfied in this case by the specifics of the overall joint venture in which PFC and Hotaling were involved. For nearly two years, Hotaling and PFC engaged in a cooperative enterprise in which PFC's role appears to have been substantial, and to have taken place in Pennsylvania. According to Pullman's affidavit, "The professional relationship between PFC and . . . Hotaling did not involve a single insurance policy . . . but rather numerous presentations over a significant period to various clients. (Pullman Affidavit at ¶ 9). Hotaling and his staff in New York communicated frequently via telephone and email with Pullman and members of the PFC staff in Pennsylvania. Copies of business-related emails, telephone call summaries, life insurance illustrations, and copies of presentations for thirty-two prospective clients of the joint venture are attached to the Affidavit as Exhibits a through ff. (Id at ¶¶ 9 and 10). These documents establish that there was a steady stream of two way communication between Hotaling and his staff in New York, and Pullman and his staff in Pennsylvania.

"The communications that Defendants had with Plaintiff in Pennsylvania by mail and e-mail are significant. The [Court of Appeals for the] Third Circuit has found that mail and telephone communications that the defendant sent into the forum state may be sufficient to be considered 'minimum contacts.'" Pulte Home Corp. v. Delaware Land Assoc., L.P., Civ. No. 08-311, 2008 WL 2168788, * at 3 ( E.D. Pa. May 22, 2008) (citing Grant Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993); and Mesalic, 897 F.2d at 701). "Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State. . . [It] is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating

the need for physical presence within a state in which business is conducted." Burger King, 471 U.S. at 476.

In these circumstances, the Court is satisfied that although Hotaling has not been physically present in Pennsylvania, and does not reside, have a business, or maintain property in the state, he and his staff have engaged in meaningful contact with PFC and its staff. Where, as here, a defendant has directed his activities at the residents of a forum, the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction." Id. (collecting cases). The Court is convinced that Hotaling had fair warning that his business relationship with Pullman could subject him to suit in Pennsylvania. See generally, Burger King, 471 U.S. at 472.

### b. Claim Arising From or Relating to Contact

Under the second prong of the specific jurisdiction inquiry it is necessary to determine whether the Plaintiff's claim can be said to "arise out of or relate to" at least one of his contacts with the Western District of Pennsylvania. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 318 (3d Cir. 2007) (citing Helicopteros, 466 U.S. at 414). "Unfortunately, the Supreme Court has not yet explained the scope of this requirement." Id. What is clear is that at least one contact on the part of the Defendant must have given rise or related to the Plaintiff's claim. Id. at 321. Each time an out-of-state resident has purposeful contact with a particular forum, the forum state's laws "extend certain benefits and impose certain obligations. Specific jurisdiction is the cost of enjoying the benefits." Id. at 323. The function of the relatedness requirement is "to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." Id. "It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiff's claims." Id. at 324.

8

In this case, it is clear that Hotaling had an agreement with PFC to facilitate the sale of an insurance policy to Presta. PFC and its staff did what appears to be considerable administrative work in order to ensure that the policy was issued and converted. Hotaling and Pullman agreed to share equally the substantial commission due on the sale. The entire amount of the commission check was sent by the insurance company to Pullman in Pennsylvania. PFC then cut a check, also in Pennsylvania, and sent Hotaling his fifty percent share. Based on the record, the Court concludes that the Plaintiff's claim is directly and closely related to a mutual business obligation which was performed in substantial part, it can be inferred, with the Defendant's knowledge, consent, and participation, in this forum.

### c. Substantial Justice and Fair Play

The final factor which the Court must consider in determining whether specific personal jurisdiction is appropriate is whether the assertion of jurisdiction "comport[s] with 'fair play and substantial justice.'" International Shoe Co., 326 U.S. at 316. The Court of Appeals for the Third Circuit has observed that where the first two prongs of the test for specific jurisdiction are satisfied, jurisdiction is "presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" O'Connor, 496 F.3d at 324 (citations omitted). Where minimum contacts are present, only in "rare circumstances" will jurisdiction be unreasonable; a defendant attempting to show a lack of fairness or substantial justice bears a heavy burden. Id.

The Supreme Court has listed factors that courts should take into account in balancing jurisdictional reasonableness. These include:

> the burden on the defendant, the forum State's interest
> in adjudicating the dispute, the plaintiff's interest in
> obtaining convenient and effective relief, the interstate
> [and international] judicial system's interest in obtaining
> the most efficient resolution of controversies, and "[t]he
> procedural and substantive interests of other nations."

Id. (citations omitted).

Other than asserting that he could not have anticipated being "hailed [sic] into court in this district," Hotaling does not provide any support for the conclusion that subjecting him to the jurisdiction of this could would offend fair play or substantial justice. Furthermore, Hotaling does not address the other factors bearing on the assessment of "fair play." The Court finds that these factors do not militate against this Court's assumption of jurisdiction. The Defendant has failed to overcome the presumption that the assertion of specific jurisdiction in this forum is constitutional. Accordingly, Hotaling's Motion to Dismiss for Lack of Jurisdiction is properly denied.

## B. <u>Venue</u>

The Defendant moves, in the alternative, to dismiss or transfer this action for lack of proper venue under 28 U.S.C. § 1406(a). The provisions regarding venue in a diversity action are set out at 28 U.S.C. § 1331(a).[4]

Although the Court has found that Hotaling's contacts with Pennsylvania are sufficient to support the Court's exercise of personal jurisdiction, it does not follow automatically that venue in this district is proper. As the language of Section 1331(a) makes clear, the focus in assessing venue is not on the "defendants' 'contacts' with a particular district, but [on] the location of those 'events or omissions giving rise to the claim.'" <u>Cottman Transmission Sys. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994). In order to establish specific jurisdiction, a plaintiff must show only

---

[4]   This provision reads as follows:
            a) A civil action wherein jurisdiction is founded only on diversity of citizenship may,
        except as otherwise provided by law, be brought only in (1) a judicial district where
        any defendant resides, if all defendants reside in the same State, (2) a judicial district
        in which a substantial part of the events or omissions giving rise to the claim
        occurred, or a substantial part of property that is the subject of the action is situated,
        or (3) a judicial district in which any defendant is subject to personal jurisdiction at
        the time the action is commenced, if there is no district in which the action may
        otherwise be brought.

that at least one contact on the part of the Defendant *related to* the Plaintiff's claim. O'Connor, 496 F.3d at 318 (citing Helicopteros, 466 U.S. at 414). The inquiry with respect to proper venue, however, is significantly more circumscribed, requiring a showing that a *substantial part of the events or omissions giving rise to the claim* occurred in the district. 28 U.S.C. § 1331(a)(2).

The only possible ground supporting venue in this district is found in Section 1331(a)(2). If venue is not proper under the terms of this subsection, the court must either dismiss or transfer the case to a district where venue is appropriate. The Defendant bears the burden of demonstrating that venue is improper. Myers v. American Dental Ass'n, 695 F.2d 716, 724 (3d Cir.1982).

In framing his argument with respect to venue, Hotaling states: "This action has virtually no contacts with the Western District of Pennsylvania, namely Plaintiff resides here, but the actions's contacts with the Southern District of New York are extensive. In fact, all of the events giving rise to Plaintiff's claims occurred in New York." (Doc. 5 at ¶ 28).[5] The materials submitted by the parties - particularly the affidavit submitted by the Plaintiff - show that virtually all of the events and transactions underlying PFC's breach of contract claim - including the alleged breach - took place in New York. The Court is, therefore, constrained by the record to conclude that venue was improperly laid in this district.

Where venue is improper, 28 U.S.C. § 1406(a) confers upon the court discretion to dismiss the action or, if it be in the interest of justice, to transfer the case to any district or division in which it could have been brought. The Supreme Court has observed that Section 1406(a) "exists to remove whatever obstacles may impede an expeditious and orderly adjudication of cases . . . on their merits." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962).

---

[5] The Plaintiff does not address the terms of 28 U.S.C. § 1406(a), at all, but instead focuses his venue argument solely on the doctrine of forum non conveniens articulated in 28 U.S.C. § 1404(a).

"Normally, if there is another district or division in which the action could have been brought, transfer is preferred to the harsh remedy of dismissal." Stanton-Negley Drug Co. v. Pennsylvania Dept. of Public Welfare, No. 07-11309, 2008 WL 1881894 *5 (W.D. Pa. April 24, 2008) (quoting WILLIAM W. SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL 4-67 (2008)).

The Court finds that the interests of justice dictate that this matter be transferred to the United States District Court for the Southern District of New York, where it is undisputed that venue is proper and the Defendant is subject to subject matter jurisdiction. As a result, the Court does not reach the Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

For the foregoing reasons, it is

NOW, this 23rd day of June 2008,

ORDERED that insofar as the Defendant's Motion (Doc. 5) seeks to dismiss this matter for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or for Improper Venue pursuant to Fed. R. 12(b)(3), it is DENIED. Insofar as the Defendant's Motion requests that this matter be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a), it is GRANTED. The court does not reach that portion of the Defendant's Motion requesting, pursuant to Fed. R. Civ. P. 12(b)(6), that this matter be dismissed for failure to state a cause of action.

The Court instructs the Clerk of this Court to transfer this case FORTHWITH to the United States District Court for the Southern District of New York.

/s/ Amy Reynolds Hay
United States Magistrate Judge

cc:     All Counsel of Record Via Notice of Electronic Filing